ROLANDO MUNIZ, a.k.a. ROLANDO MARTINEZ AND ELENA MUNIZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Muniz v. Commissioner
Docket No. 9305-90
United States Tax Court
T.C. Memo 1994-151; 1994 Tax Ct. Memo LEXIS 152; 67 T.C.M. (CCH) 2625; April 12, 1994, Filed *152 For petitioners: Sidney A. Soltz. For respondent: Stephen R. Doroghazi and Julius Gonzalez. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(b)
Sec. 6661
1986
$ 63,099
[1] $ 260
[1] $ 43,421
$ 15,775
1987
11,482
[1] 57
[1] 7,763
2,871
All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are: (1) Whether respondent correctly determined that petitioners' gross income for 1986 and 1987 should be increased by the amount of bank deposits made by petitioners during 1986 and 1987 in the respective amounts of $ 96,235 and $ 50,585; and (2) whether petitioners are liable for additions to tax for fraud pursuant to section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated *153 herein by this reference. Petitioners, husband and wife, resided in Miami, Florida, at the time the petition in this case was filed. Petitioners married in December 1983, and were husband and wife during both years in issue. Petitioner Rolando Muniz (Rolando) left Cuba in 1980, at age 48, to come to the United States. Prior to coming to the United States, he had been imprisoned by the Cuban Government for 17 years for political activity. Upon arriving in the United States, Rolando went to work for Angel Rodriguez (Rodriguez) at a car dealership doing menial labor, such as washing cars and running errands. Sometime in 1981 or 1982, Rolando began delivering packages for Rodriguez. At first, Rolando did not know the contents of the packages. Subsequently, sometime in 1982, he learned that the packages contained money derived from a marijuana smuggling operation. Rolando then demanded a "real" payment for his acting as a courier in the illegal operations. Although Rolando received no set payment for the delivery of the packages, from time to time Rodriguez paid Rolando amounts ranging from $ 5,000 to $ 10,000. The amount paid to Rolando for his participation in the marijuana *154 smuggling operations totaled between $ 200,000 and $ 250,000. On April 27, 1988, Rolando was indicted in a multi-count Federal indictment. The indictment charged Rolando and others with conspiring to import marijuana into the United States. Rolando was also charged with various counts of importing marijuana into the United States on or about the following dates: Count II - May 1, 1983 Count III - June 5, 1983 Count VI - November 20, 1983 Count VII - March 1984 After a jury trial, Rolando was found guilty of the conspiracy count and Count III, the importation of marijuana into the United States on June 5, 1983. As a result of his conviction, Rolando was imprisoned for 48 months. During 1986 and 1987, petitioners deposited substantial amounts into various bank accounts. The amounts of such deposits, as well as certain other transactions, were stipulated, as follows: Item 1986
1987
Total bank deposits
$ 121,121
$ 66,433 Less reduction for nontaxable sources
0
( 1,200)
Net taxable deposits
121,121
65,233 Plus mortgage pay-off
14,435
0 Plus Federal withholding
0
796 Plus FICA
0
988 Total
135,556
67,017 On their tax returns for 1986 and 1987, *155 petitioners reported the following income items: Item 1986
1987
Wages
$  2,784
$ 14,300
Schedule D assets sold
29,580
0
Schedule E partnership income
4,438
0
Other income (gambling)
697
1,144
As reported
37,499
15,444
Respondent determined that petitioners had unexplained deposits and other transactions, as follows: Item 1986
1987
Total bank deposits
$ 121,121 $ 66,433 Less reduction for nontaxable sources
(1,200)
Plus FICA
796 Plus Federal withholding
988 Net taxable deposits
121,121 67,017 Plus mortgage pay-off
14,435 0 Total
135,556 67,017 Less reported income
[1] ( 39,321)
(15,444)
Unexplained deposits and other transactions
96,235 [2] 51,573 During 1986 and 1987, petitioners did not receive any gifts, inheritances, legacies, or devises. Petitioners received no income from nontaxable *156 sources during 1986. They did, however, receive $ 1,200 from nontaxable sources during 1987. Respondent determined that the unexplained deposits and other transactions constituted taxable income, except for the $ 1,200 from nontaxable sources with regard to 1987. Rolando testified that he stopped participating in the marijuana operations prior to his marriage to Elena in December 1983. He claims he hid the money received from his participation in the marijuana operations in his house, in a pillowcase, under his bed, and in the wall, and that the deposits that respondent determined were unreported income in 1986 and 1987 came from that cash hoard. OPINION The use of the bank deposits method for computing income has long been sanctioned by the courts. , affd. . Bank deposits are prima facie evidence of income. ; ; see also , *157 affg. . In analyzing a bank deposits case, deposits will be considered income when there is no evidence that they represent anything other than income. ; . Rolando readily admitted that he was engaged in a marijuana smuggling operation in 1982 and 1983, and that he received substantial sums of money in those years as a courier for the illegal operations. He claims, however, that he ceased participating in the smuggling operations prior to his marriage to Elena, which occurred in December 1983. Rolando further claims that he had a large cash hoard from his marijuana smuggling days and that the moneys that were deposited into various banks in 1986 and 1987 came from that cash hoard. As the trier of fact, we are required to distill truth from falsehood. As we stated in , "Truth itself is never in doubt, but it often has an elusive quality which makes the search for it fraught with difficulty." *158 After observing Rolando testify at trial, we are satisfied, as best we can be, that he was telling the truth. We found his testimony to be credible. We listened to him testify that as a political prisoner in Cuba, doing forced labor, he lost his leg. And that when he came to the United States, it was difficult for him to find work and earn sufficient money to support himself while being physically impaired. We believe that he hoarded money in his house and gradually began taking the money out of hiding (beginning in 1984) and depositing it into bank accounts because he was afraid that he otherwise might frivolously spend the money, and, in his situation, "having only one leg, it is not easy to work". We believe him when, in responding to the Court's inquiry, "weren't you afraid that the Internal Revenue Service would discover the money and then come after you?", he said "I never thought of that. I never even thought of laundering the money, the way that I learned after I went to prison. Put the money in the bank and that is all." We therefore find, and hold, that the moneys deposited in petitioners' bank accounts during 1986 and 1987 came from cash received in years preceding *159 those in issue. As such, we do not sustain respondent's determination that the amount of petitioners' gross income for 1986 and 1987 should be increased by the amount of the bank deposits made by petitioners during those years. As a result of said determination, respondent's determination that petitioners are liable for additions to tax for fraud for 1986 and 1987 is not sustained. To reflect concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Plus 50 percent of the interest due on the deficiency.↩
1. This amount ($ 39,321) differs from the amount ($ 37,499) reported as income in 1986. The record contains no explanation for this difference.↩
2. This amount ($ 51,573) differs from the amount by which respondent increased petitioners' 1987 income ($ 50,585). The record contains no explanation for this difference.↩